PERNIKOFF CONSTRUCTION COMPANY,  )
                                    )
        Plaintiff(s),             )
                                      )
     vs.                        )        Case No. 4:09CV894 JCH
                                      )
U.S. BANK, N.A., et al.,           )
                                      )
        Defendant(s).        )

## MEMORANDUM AND ORDER

This matter is before the Court on Defendants U.S. Bank, N.A. ("Drawee Bank"), U.S. Bank

National Association North Dakota ("Credit Card Bank") and U.S. Bancorp's Motion for Summary

Judgment, filed March 9, 2010.[1]  (Doc. No. 25).  The motion is fully briefed and ready for

disposition.

## BACKGROUND

From at least 1988 through April, 2008, Plaintiff Pernikoff Construction Company maintained

a business checking account with Drawee Bank and its predecessor, Mercantile Bank (the

"Account").  (Defendant U.S. Bank's Statement of Uncontroverted Material Facts ("Defendants'

Facts"), ¶ 1).  From December, 2003, through April, 2008, Drawee Bank mailed Plaintiff account

---

[1] The instant Motion for Summary Judgment originally was filed by the sole Defendant in this matter, U.S. Bank, N.A. (Doc. No. 25).  With leave of Court, Plaintiff filed an Amended Complaint on April 19, 2010, adding U.S. Bank National Association N.D. and U.S. Bancorp as Defendants. (Doc. No. 38).  In their reply brief, Defendants state as follows:  "Although at that time [when the original Motion for Summary Judgment was filed] U.S. Bank, N.A. was the only defendant, in its motion it explained in detail the involvement of U.S. Bank National Association North Dakota (the Credit Card Bank), and why summary judgment would be appropriate regardless of which bank Plaintiff named as defendant.  Accordingly, as explained at pp. 3-5 herein, the pending motion is fully applicable to all claims asserted in Plaintiff's Amended Complaint."  (Reply in Support of Motion for Summary Judgment ("Defendants' Reply"), P. 2 n.2).  The Court thus treats the instant motion as one for summary judgment as to all Defendants.

statements every month, setting forth all activity associated with the Account during the previous month. (Id., ¶ 32). The monthly account statements identified all checks written on the Account which had been presented to Drawee Bank for payment during the month covered by the statement, and also included copies of all cancelled checks paid during the preceding month. (Id., ¶¶ 33, 36).

From at least 2000 through April, 2008, Plaintiff employed Sherri Berry ("Berry") as its bookkeeper, with full access to the checks, checkbook, and checking register for the Account. (Defendants' Facts, ¶¶ 2, 3). Berry was solely responsible for reconciling the Account, and for making entries of any nature in the register for the Account. (Id., ¶¶ 4, 5).[2] Berry was not, however, authorized to sign checks written on the Account. (Id., ¶ 6).

From at least 2003 through April, 2008, Berry maintained a credit card account with Credit Card Bank (the "Credit Card Account"). (Defendants' Facts, ¶ 8). From December, 2003, through April, 2008, Credit Card Bank mailed Berry monthly account statements for the Credit Card Account, which included a payment coupon and instructions indicating that Berry was to mail her monthly payment and the coupon to a lockbox located at P.O. Box 790408, St. Louis, MO.[3] (Id., ¶ 10). Between December, 2003, and April, 2008, approximately 150 checks totaling at least $387,800.00[4] were drawn on the Account and submitted to Credit Card Bank in payment of Berry's Credit Card Account (the "Checks"). (Id., ¶¶ 11, 12). The Checks were made payable to U.S. Bank, and

_____

[2] Berry was granted these privileges and responsibilities despite the fact that Plaintiff was aware she had misappropriated Plaintiff's funds on at least one occasion prior to the misappropriation of Plaintiff's funds at issue in the instant lawsuit. (Defendants' Facts, ¶ 7).

[3] The lockbox operation is run by Drawee Bank, and processes payments for 600 different internal and retail customers, including Credit Card Bank. (Defendants' Response to Plaintiff's Statement of Additional Facts ("Defendants' Response to Plaintiff's Facts"), ¶ 44).

[4] Plaintiff maintains the total amount of the unauthorized checks was at least $412,000.00. (Amended Compl. ¶ 23).

contained the purported drawer's signature of Michael Pernikoff.[5]  (Id., ¶¶ 13, 14).[6]  Berry's name did not appear anywhere on the Checks.  (Plaintiff's Additional Material Facts, ¶ 45).  The Checks were received by mail into the lockbox, which receives approximately 1.6 million credit card payments each month.  (Defendants' Facts, ¶¶ 15, 17).  According to Defendants, the contents of the lockbox are delivered by courier to an Operations Center in St. Louis for automated processing; in other words, checks and payment coupons received at the Operations Center are processed mechanically by a procedure in which machines open the envelopes, read coding on the payment coupons, and then apply the enclosed payment to the account indicated on the payment coupon.  (Id., ¶¶ 18, 19).  Defendants maintain the payment processing does not involve sight examination, but may require manual intervention at times, such as when a customer fails to include an account number or payment coupon, or includes other notes regarding his or her account.  (Id., ¶¶ 20, 21).[7]

Once the payment has been applied to the proper credit card account, the check used to make the payment is forwarded for payment to the bank upon which the check was drawn.[8]  (Defendants'

---

[5] Michael Pernikoff, then Plaintiff's Vice-President and an authorized and frequent signatory on the Account, died in July, 2009.  (Amended Compl., ¶¶ 25, 26).

[6] The monthly account statements mailed to Plaintiff identified and included copies of the approximately 150 Checks at issue here.  (Defendants' Facts, ¶¶ 33, 36).

[7] Plaintiff counters that according to Thomas Hempsted, the head of the St. Louis lockbox operation, between 62% and 70% of the payments received at the lockbox required some manual intervention during the relevant time period.  (Plaintiff's Statement of Material Facts in Opposition, ¶ 20, citing Hempsted Dep., PP. 73-74, 91-93, 106).  While Defendants do not deny that this percentage of payments initially were processed in "low speed," they contend the human intervention was limited to a verification of the amount of the payment and whether it accorded with the amount written on the payment coupon.  (Defendants' Response to Plaintiff's Facts, ¶ 46, citing Hempsted Dep., PP. 73-74, 111-13, 118-33).  In any event, it is undisputed that the "low speed" processing did not include a comparison of the drawer of the check with the owner of the credit card account, nor did any manual intervention include a signature comparison.  (Defendants' Response to Plaintiff's Facts, ¶ 46, citing Hempsted Dep., PP. 114-22, 132-37, 139-43; see also Defendants' Facts, ¶ 21).

[8] Plaintiff maintains the Checks did not need to be forwarded, because they were in Drawee Bank's possession from the time they arrived at the lockbox center.  (Plaintiff's Response to

Facts, ¶ 22). Only when there was no payment coupon or other indication as to which credit card account the payment was to be applied, would the Operations Center forward the check to Credit Card Bank's Operations Center in Fargo, North Dakota for evaluation and/or entry. (Id., ¶ 24).

On March 1, and March 14, 2008, Credit Card Bank received two of the Checks by mail that did not include credit card payment coupons. (Defendants' Facts, ¶ 26). As a result, the checks were not processed automatically in St. Louis, but instead were forwarded to North Dakota for evaluation. (Id., ¶ 27). Sometime after March 14, 2008, Credit Card Bank contacted Plaintiff, the drawer of the Checks, and learned that Plaintiff believed the checks were not authorized.[9] (Id., ¶ 28). Credit Card Bank and Drawee Bank then reviewed all the payments made on Berry's Credit Card Account, and on or about April 16, 2008, provided Plaintiff with copies of the checks received by Credit Card Bank in payment of Berry's Credit Card Account. (Id., ¶ 29).

Plaintiff filed its original Petition in this matter in Missouri State Court on or about April 21, 2009. In its Amended Complaint, filed in this Court on April 19, 2010, Plaintiff asserts the following causes of action against Defendants: Breach of Statutory Duty, R.S.Mo. §§ 469.240-350, Uniform Fiduciaries Law (Count I); and Tort (Count II). (Doc. No. 38). As stated above, Defendants filed the instant Motion for Summary Judgment on March 9, 2010, asserting there exist no genuine issues of material fact and Defendants are entitled to judgment as a matter of law on both Plaintiff's claims. (Doc. No. 25).

## SUMMARY JUDGMENT STANDARD

---

Defendants' Facts, ¶ 22).

[9] To date, Defendants have not received notification from Plaintiff, orally or in writing, as to which of the Checks Plaintiff believes were forged and which it claims were otherwise unauthorized. (Defendants' Facts, ¶ 38).

The Court may grant a motion for summary judgment if, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The substantive law determines which facts are critical and which are irrelevant. Only disputes over facts that might affect the outcome will properly preclude summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Summary judgment is not proper if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Id.

A moving party always bears the burden of informing the Court of the basis of its motion. Celotex, 477 U.S. at 323. Once the moving party discharges this burden, the nonmoving party must set forth specific facts demonstrating that there is a dispute as to a genuine issue of material fact, not the "mere existence of some alleged factual dispute." Fed. R. Civ. P. 56(e); Anderson, 477 U.S. at 247. The nonmoving party may not rest upon mere allegations or denials of its pleadings. Anderson, 477 U.S. at 256.

In passing on a motion for summary judgment, the Court must view the facts in the light most favorable to the nonmoving party, and all justifiable inferences are to be drawn in its favor. Anderson, 477 U.S. at 255. The Court's function is not to weigh the evidence, but to determine whether there is a genuine issue for trial. Id. at 249.

## DISCUSSION [10]

## I.    Count I:  Breach Of Uniform Fiduciaries Law

---

[10] In its response to Defendants' Motion for Summary Judgment, Plaintiff first requests that the Court disregard the affidavits of Barbara Simenson and Kathleen Deno, submitted in support of Defendants' motion. (Plaintiff's Opposition to Motion for Summary Judgment of Defendant U.S. Bank National Association ("Plaintiff's Opp."), PP. 4-6). Upon consideration, the Court will deny this request as unwarranted under the circumstances.

The Uniform Fiduciaries Law ("UFL") "is the Missouri codification of the Uniform Fiduciaries Act, which alters the common law with respect to the duties of parties who deal with fiduciaries." Watson Coatings, Inc. v. American Exp. Travel Related Services, Inc., 436 F.3d 1036, 1040 (8th Cir. 2006) (internal quotations, footnote and citations omitted). "The UFL's purpose is to relieve banks of their common law duty of inquiring into the propriety of each transaction conducted by a fiduciary and to prevent banks and others who typically deal with fiduciaries [from being] held liable for a fiduciary's breach of duty absent either (1) actual knowledge of the breach or (2) knowledge of sufficient facts to constitute bad faith." Id. (internal quotations and citations omitted). "[M]ere negligence on the part of the depository bank is not sufficient to hold it liable to the principal if the fiduciary in fact misappropriated the fund." Hendren v. Farmers State Bank, S.B., 272 S.W.3d 345, 349 (Mo. App. 2008) (internal quotations and citations omitted).

In its response to Defendants' Motion for Summary Judgment, Plaintiff makes clear its claim against Defendants arises primarily under Section 310 of the UFL, Mo.Rev.St. § 469.310[11], which states in relevant part as follows:

> [I]f [a fiduciary] otherwise makes a deposit of funds held by [her] as fiduciary, the bank receiving such deposit is not bound to inquire whether the fiduciary is committing thereby a breach of [her] obligation as fiduciary; and the bank is authorized to pay the amount of the deposit or any part thereof upon the personal check of the fiduciary without being liable to the principal, unless the bank receives the deposit or pays the check with actual knowledge that the fiduciary is committing a breach of [her] obligation as fiduciary in making such deposit or in drawing such check, or with knowledge of such facts that its action in receiving the deposit or paying the check amounts to bad faith.

Under Eighth Circuit law, in order to establish a claim under Section 469.310 Plaintiff must show that Berry was a fiduciary, that she breached her fiduciary duty, and that Defendants "had either actual

---

[11] While Plaintiff maintains its case invokes the UFL in its entirety, it concedes the clear focus of the Complaint is § 310. (Plaintiff's Opp., PP. 10, 12-13). Plaintiff makes no assertions with respect to other provisions of the UFL, and so the Court addresses only § 310 in this Order.

knowledge of the breach or sufficient facts such that [their] conduct amounted to bad faith." In re Broadview Lumber Co., Inc., 118 F.3d 1246, 1251 (8th Cir. 1997) (citation omitted).  Plaintiff concedes Defendants had no actual knowledge of Berry's alleged breach of fiduciary duty (see Plaintiff's Opp., P. 14), and so the Court turns to consideration of whether Defendants' actions in accepting the Checks for payment of Berry's Credit Card Account balances amounted to bad faith.[12]

While the UFL does not define bad faith, it does define "good faith," as follows:  "A thing is done 'in good faith' within the meaning of sections 469.240 to 469.350, when it is in fact done honestly, whether it be done negligently or not."  Mo.Rev.St. § 469.240(2).  With respect to bad faith, the Missouri Court of Appeals has held as follows:

> Evil motive is not the gauge; it is whether it is commercially unjustifiable for the (bank) to disregard or refuse to learn facts readily available.  The facts and circumstances must be so cogent and obvious that to remain passive would amount to a deliberate desire to evade knowledge because of a belief or fear that inquiry would disclose a defect in the transaction.

Hendren, 272 S.W.3d at 350 (internal quotations and citations omitted).  Thus, in order to establish bad faith, Plaintiff must show Defendants knew or disregarded knowledge that Berry was breaching her fiduciary duty.  Watson Coatings, 436 F.3d at 1041.  Mere suspicious circumstances are insufficient to show bad faith, as there exist many legitimate reasons as to why a fiduciary and principal might engage in odd checking practices.  Id. (citing with approval United Catholic Parish Schs. of Beaver Dam Educ. Assoc. v. Card. Servs. Center, 248 Wis.2d 463, 636 N.W.2d 206, 208-211 (2001) (holding that Card Services Center acted in good faith in taking corporate checks from a fiduciary to pay the fiduciary's credit card bills because the checks had no facial irregularities, could have been for a legitimate reimbursement by the company for purchases the fiduciary made on the

---

[12] Because the issue of bad faith is dispositive, the Court need not address Defendants' other arguments in favor of summary judgment on Count I.

- 7 -

company's behalf, and were drafted over a seven-year period by the fiduciary without any complaint from the company)).

Upon consideration, the Court finds Defendants acted in good faith when they accepted the Checks from Berry as payment for bills on her Credit Card Account, because they acted honestly and in a commercially reasonable manner. Watson Coatings, 436 F.3d at 1042. With respect to honesty, Plaintiff presents no evidence that Defendants knew Berry was Plaintiff's fiduciary (or even its employee)[13], much less that they knew she was breaching her fiduciary duties to Plaintiff. Watson Coatings, 436 F.3d at 1042. Defendants further had no reason to question the Checks, because they contained no facial irregularities; in other words, the Checks were made payable to U.S. Bank, and drawn on Plaintiff's corporate checking account by an authorized signatory, Michael Pernikoff.[14] Id. Finally, Defendants processed the Checks for more than four years without complaint from Plaintiff that Berry had no authority to pay her personal credit card with corporate checks, despite the fact that Drawee Bank mailed Plaintiff account statements every month setting forth all activity associated with the Account during the previous month. Id. Under these circumstances, there was no reason for Defendants to suspect Berry either had forged or deceived Michael Pernikoff into signing the Checks, and so even the "suspicious circumstances" held insufficient to constitute bad faith in Watson were not present here. See Id. at 1041.

---

[13] The Court makes no determination as to whether Berry was in fact Plaintiff's fiduciary.

[14] Whether the Checks would have appeared facially irregular to Plaintiff is irrelevant to the Court's analysis. Rather, the appropriate inquiry is whether the Checks were facially irregular to Defendants. As noted above, even assuming Defendants were aware that the payor and the credit card holder were different entities, such knowledge would not suffice to render the Checks facially irregular from Defendants' perspective, as "many legitimate reasons [exist as to] why an agent and principal might engage in odd checking practices." Watson Coatings, 436 F.3d at 1041 (internal quotations and citations omitted).

In addition to the foregoing, the Court finds Defendants acted in a commercially reasonable manner by using their automated check processing system.[15] See Watson Coatings, 436 F.3d at 1041 ("[Defendant] processes over a million payments a day by electronic means--the only practical means to accomplish the task."). In other words, Plaintiff presents no evidence that Defendants deviated from their own procedures in processing the Checks, or that their automated check processing procedures varied unreasonably from general banking usage.[16] See Id. at 1041-42 (citation omitted) ("Where a bank or payee electronically processes checks pursuant to its normal procedures and does not employ automated procedures that unreasonably vary from general banking usage, no genuine issue of material fact exists as to whether the payee's automated processing of checks is commercially reasonable.").[17] Under these circumstances, Plaintiff fails to establish a genuine issue of material fact

---

[15] Although Plaintiff complains the system was not fully automated, upon review the Court finds the processes that are relevant here clearly were automated.

[16] Plaintiff failed to designate an expert on banking practices with respect to payment of checks within the time permitted by this Court's Case Management Order, and its request for leave to designate an expert out of time, filed nearly eight months after the designation deadline and more than two months after the date on which, by its own admission, Plaintiff recognized the need for such expert, was denied as untimely by the Court. (Doc. Nos. 60, 62). Although there may be situations in which expert testimony is not required in order to establish a negligent deviation from the "commercially reasonable standard" against which Defendants' actions are to be measured, see Free State Bank & Trust Co. v. Ellis, 411 A.2d 1090 (Md. App. 1980), the Court agrees with Defendants that in this case, "[w]hat constitutes reasonable or justifiable banking practices with respect to automated processing of checks is not a matter of common knowledge, and requires evidence of reasonable banking practices in the industry." (Defendant U.S. Bank's Memorandum in Support of its Motion for Summary Judgment, P. 13 n. 7).

[17] In its surreply, Plaintiff alleges Defendants should have investigated the use of other software and/or staffing procedures that would have "red-flagged" Berry's fraudulent credit card payments. (Plaintiff's Surreply to Motion for Summary Judgment, P. 3). Plaintiff offers no evidence, however, that Defendants were under any obligation to do other than what they did in this matter, i.e., implement and utilize procedures that comported with general banking standards.

as to whether Defendants acted in bad faith under the terms of the UFL, and so Defendants' Motion for Summary Judgment as to Count I must be granted.[18]

## II.    Negligence[19]

In Count II of its Complaint, Plaintiff alleges in pertinent part as follows:  "In taking the wrongfully deposited checks from Bookkeeper, processing them in concert, and accepting them for deposit to Bookkeeper's personal VISA Card account with U.S. Bank N.D., each of U.S. Bank N.D. and U.S. Bank severally and both of them jointly failed to use that degree of skill and learning ordinarily used under the same or similar circumstances by an expert in U.S. Bank N.D.'s and U.S. Bank's business and thus each was negligent." (Amended Complaint, ¶ 52).  In order to state a claim for negligence under Missouri law, Plaintiff must show:  "(1) the defendant[s] had a duty to protect the plaintiff from injury; (2) the defendant[s] breached that duty; and (3) the breach was the proximate cause of the plaintiff's injury."  Stein v. Novus Equities Co., 284 S.W.3d 597, 604-05 (Mo. App. 2009) (citation omitted).  "A legal duty owed by one party to another may arise under at least three sources:  (1) the legislature; (2) the law; or (3) a contract."  Id. at 605 (citation omitted).  Whether a legal duty sufficient to support a negligence claim exists is a question of law.  Id.

Upon consideration, the Court finds Defendants are entitled to summary judgment on Plaintiff's negligence claim, for several reasons.  First, with respect to Credit Card Bank, Missouri

---

[18] Upon consideration, the Court finds Plaintiff's alleged evidence that Defendants benefitted financially from the transactions, while "a factor to be considered in determining whether [Defendants] acted in bad faith," is insufficient to create a genuine issue of material fact on the issue, in light of the overwhelming evidence that Defendants acted honestly and in a commercially reasonable manner.  See Trenton Trust Co. v. Western Sur. Co., 599 S.W.2d 481, 493 (Mo. banc 1980) (bank acts in bad faith only when it has both a reason to suspect a misappropriation by a fiduciary and a monetary interest in the continuance of such activity).

[19] Although Count II of Plaintiff's Amended Complaint is captioned "Tort," the cause of action is virtually identical to Count III of Plaintiff's original Petition, entitled "Negligence."  The Court thus treats Count II as a claim for negligence.

law is clear that as the collecting bank it owed no duty of care to Plaintiff, a party with whom it did not share a contractual relationship. City of Wellston v. Jackson, 965 S.W.2d 867, 869-70 (Mo. App. 1998). With respect to Drawee Bank, Plaintiff fails to present evidence that it had a duty either to investigate the circumstances surrounding checks drafted by Michael Pernikoff, an acknowledged signatory, or otherwise to ensure that Plaintiff's employee was not embezzling funds.

Even assuming the existence of a duty on the part of Defendants in this matter, Plaintiff fails to demonstrate a breach of such duty. In other words, Plaintiff presents no evidence to rebut Defendants' contentions that Drawee Bank fulfilled its obligations under the Deposit Account Agreement between Drawee Bank and Plaintiff, and that in utilizing their automated check processing procedures both Defendants exercised "ordinary care" as required under common law and/or the Uniform Commercial Code ("UCC"). (Defendants' Reply, PP. 17-20).[20] Defendants' Motion for Summary Judgment on Count II of Plaintiff's Amended Complaint must therefore be granted.[21]

---

[20] As noted above, Plaintiff presents no evidence that Defendants failed to follow their own procedures in processing the Checks, or that the automated check processing procedures they employed were inadequate or out of line with what similar banks were utilizing during the relevant time period.

[21] In light of the above ruling, the Court need not address Defendants' assertions that Plaintiff's negligence claim is precluded by the UCC and UFL, and/or barred by the applicable statutes of limitations.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment (Doc. No. 25) is **GRANTED**, and Plaintiff's claims are **DISMISSED** with prejudice. An appropriate Judgment will accompany this Memorandum and Order.


Dated this 16th day of August, 2010.


/s/ Jean C. Hamilton
UNITED STATES DISTRICT JUDGE